UNITED STATES of America, Appellee,

v.

Francis E. KING, Appellant.

No. 86, Docket 77–1221.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1977.

Decided Oct. 7, 1977.

Murray Appleman, New York City, for appellant.*

Alvin A. Schall, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (David G. Trager, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., of counsel), for appellee.

Before GURFEIN and VAN GRAAFEILAND, Circuit Judges, and COFFRIN, District Judge.**

GURFEIN, Circuit Judge:

Appellant Francis King, a former New York City policeman, was convicted after a jury trial on four counts of an indictment charging violations of federal income tax laws, 26 U.S.C. §§ 7206(1) and 7201.[1]

King makes several contentions on appeal. The most substantial is an argument that certain evidence admitted against him should have been barred under the doctrine of collateral estoppel. He contends that the Government should not have been permitted to introduce evidence of illegal payments to him in this tax evasion case because the same alleged payments had been admitted in a prior criminal prosecution for conspiracy to violate the civil rights of victims by extortion and appellant had been acquitted on those charges.

The previous prosecution charged a conspiracy among members of the Special Investigation Unit (SIU) of the New York City Police Department from 1969 to 1972 to deprive citizens of their civil rights by subjecting them to illegal surveillance and by extorting payoffs from them in violation of 18 U.S.C. § 241. Appellant was acquitted on the conspiracy charged. The Government had relied heavily on the testimony of a former SIU sergeant, John White, an admitted participant in the conspiracy who testified to the receipt of illegal payoffs by appellant. The Government in the earlier prosecution had also introduced documentary evidence concerning expenditures made by appellant in excess of

---

* Though appellant filed his main brief *pro se*, the reply brief was submitted by counsel.

** Hon. Albert W. Coffrin, U. S. District Judge for the District of Vermont, sitting by designation.

1. Two other counts were dismissed after the jury found lack of venue in the Eastern District.

Appellant was sentenced to three years imprisonment on Counts One and Six; five years on Count Five and one year on Count Four, each count to run concurrently. He was also fined $5,000 each on Counts One and Six, and $10,000 on each of Counts Four and Five, for a total of $30,000.

his salary as a police officer. Substantially the same evidence was introduced in the tax trial to demonstrate that King had income on which he paid no tax.

■ Prior to the tax trial, appellant moved to have the White testimony and the expenditures proof barred on grounds of collateral estoppel. Judge Weinstein properly denied the motion.

*Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), held that the Fifth Amendment guarantee against double jeopardy embodies collateral estoppel as a constitutional requirement. In *United States v. Cala,* 521 F.2d 605, 608 (2d Cir. 1975), we held that the defendant has the burden of establishing that the issue which he seeks to foreclose from consideration was "necessarily" determined in his favor in a prior prosecution. When the prior proceeding was a jury trial, the burden is a heavy one, since "it usually cannot be determined with any certainty upon what basis the previous jury reached its general verdict," *United States v. Gugliaro,* 501 F.2d 68, 70 (2d Cir. 1974); *United States v. Seijo,* 537 F.2d 694, 697 (2d Cir. 1976), *cert. denied,* 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977).

In the instant case, appellant has failed to discharge the burden of showing that the issues he seeks to foreclose were necessarily determined in his favor in the conspiracy case. There are a number of plausible explanations for the jury's failure to convict King in 1976 aside from the possibility that it may have disbelieved White. The jury may reasonably have found, though they thought White to be credible, that although King committed certain extortionate acts, they were single spontaneous acts, not part of a conspiracy, or not part of a single conspiracy as the indictment charged. Or the jury may have accepted the argument made by King's counsel in his summation that no overt act in the conspiracy was

committed after December 1970 and that, therefore, the prosecution was barred by the statute of limitations.

As to the evidence concerning expenditures, the jury in the 1976 conspiracy case could have believed that appellant did in fact make purchases substantially in excess of his reported income but that the Government failed to prove beyond a reasonable doubt that the purchases were subsidized by funds extorted through the conspiracy. That King made such expenditures was not even contested at the first trial. Thus, Judge Weinstein, who presided at both trials and was therefore familiar with the evidence adduced, could properly conclude that King failed to establish that the issue of White's credibility and the fact of King's unaccounted for sources of income were necessarily determined adversely to the Government in the 1976 conspiracy trial.

■ Appellant also urges that there was insufficient evidence to convict on each of the four counts on which he was convicted. We disagree.

Count One of the indictment alleged that King signed his 1970 income tax return knowing that it underestimated his adjusted gross income and hence contained a false statement as to a material matter.[2] The Government employed the expenditures method to prove its case. It established the amount of King's purchases of goods and services not attributable to the resources at hand at the beginning of the year or to non-taxable receipts during the year. Calculated by that method, appellant's income was well in excess of $18,500, whereas appellant reported only $16,853 as adjusted gross income on his 1970 return. The term "well in excess" is used because the $18,500 figure that the Government documented did not include daily living expenses such as food, clothing and entertainment. Even if appellant is correct in his assertion that the IRS expert made certain small computa-

2. Count One charged a violation of 26 U.S.C. § 7206(1); Counts Four and Five charged, respectively, wilful failure to file a 1973 return and attempt to evade taxes by failing to file a return and by concealing income, 26 U.S.C.

§§ 7203 and 7201. Count Six charged that King made a false statement in an application to extend his time for filing a return for 1973, 26 U.S.C. § 7206(1).

tional errors, this was an argument that could or should have been made to the jury. Based on the evidence presented, the jury could reasonably infer that there was a material discrepancy between appellant's actual and reported income.

Appellant also contends that the attribution to him of a zero net worth at the beginning of the taxable year 1970 is unsupportable because the Government knew from the earlier trial that White testified to his receipt of substantial illicit cash in the months of October through December 1969 which should have been carried over as an opening balance of cash.

Though the first jury, as we have seen, may have believed White, there was no record which would require the Internal Revenue Service to accept as fact the receipt of such sums by King or to assume that he did not spend the money before January 1. Since appellant was present when White first testified, there can be no question of concealment by the Government. Appellant could have offered the testimony in redacted form so as to keep from the jury the illicit character of the cash. No effort whatever was made to correct what is now said to be an erroneous base for the internal revenue agent's calculations.

In 1974 King failed to file a 1973 income tax return. The evidence showed that during 1973 he had total expenditures of $131,740.19, adjusted gross income of $93,275.93 and taxable income of $82,016.42. During that year he bought a house for $110,000, for which he made a down payment of $30,000 in cash and $25,500 by check, the cash being hidden at King's direction to reduce the purchase price from the true price of $110,000 to $80,000. In December, 1973, King learned that he was under investigation. He apparently determined to postpone filing a return on time, and a jury could infer that the delay was to enable appellant to discover how much the state investigators could prove before deciding how much income to report. In any event, he applied for an extension of time to file on April 15, 1974 and falsely declared that he had timely filed his federal income tax return for each of the preceding three years. Though his request for a two months' extension was granted, the 1973 return was not filed until the Spring of 1975. There was sufficient evidence for a jury to find that King had wilfully failed to file the 1973 return, that he had attempted to evade the tax by concealment and that the declaration in his application for an extension was wilfully false.

Appellant further asserts that the Government failed to establish venue in the Eastern District with respect to Count One, which charged him with filing a false statement in his 1970 return in violation of 26 U.S.C. § 7206(1). Appellant concedes that the 1970 return listed Commack, New York (within the Eastern District), as his mailing address, but contends that the evidence adduced at trial showed that he actually resided in Yonkers, New York (within the Southern District), and filed his return in Andover, Massachusetts.

■ Although the indictment clearly showed what is now claimed to be the lack of venue, no motion was made based on insufficient venue. Appellant did not raise the point. Nor did he challenge the venue in Count One on the motion for a judgment of acquittal. This constitutes a waiver. *United States v. Price,* 447 F.2d 23, 27 (2d Cir.), *cert. denied,* 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971). In any event, venue lies where a false statement is prepared and signed, as well as where it is received and filed. *United States v. Slutsky,* 487 F.2d 832, 838–39 (2d Cir. 1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287, *rehearing denied,* 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974). Since appellant used his Commack address in the return, and his wife, who also signed the return, was at all relevant times a Commack resident, the jury could reasonably conclude that the return was prepared and/or signed in the Eastern District.

■ A final argument advanced by appellant is that the small amount of money involved in this case indicates that he is a victim of selective prosecution. Inasmuch

as appellant has made no attempt to establish "impermissible considerations" or "invidious motive" on the part of the Government, his objection cannot prevail. *United States v. Berrios*, 501 F.2d 1207, 1221 (2d Cir. 1974).

The conviction is affirmed.